(No. 5983.   October 6, 1933.)

ALICE J. GOODY, by Order of Substitution for the Original Plaintiff, FRANK H. GOODY, Respondent, v. MARYLAND CASUALTY COMPANY, a Corporation, Appellant.

MARYLAND CASUALTY COMPANY, a Corporation, Appellant, v. ALICE J. GOODY, by Order of Substitution for the Original Defendant, FRANK H. GOODY, ASA R. LLOYD and ESTHER B. ROWLES, CLARENCE B. CUTHBERT, and All Other Unknown Claimants Against the Plaintiff Under and by Virtue of a Certain Realtor's Bond, Made, Executed and Delivered by the Plaintiff to One E. LEE BROWNING, on the First Day of March, A. D. 1928, Pursuant to Chapter 184, 1921 Session Laws of the State of Idaho, as Amended, Respondents.

[25 Pac. (2d) 1045.]

524

Chas. W. Sandles, for Appellant.

Wm. P. Hemminger, for Respondents.

GIVENS, J.—January 12, 1928, one Frank H. Goody, deceased, now represented by his widow, administratrix of his estate, entered into a contract with E. L. Browning for the purchase of certain real estate for $1,700, paying $200 thereof in cash. After final payment was made, Goody learned that Browning had paid only $400 on a $1,000 mortgage against the place.

This suit was instituted by Goody, against appellant, surety on Browning's bond as a real estate broker, for $625, which Goody paid the mortgagee to prevent its foreclosure, basing

such action on the fraud of Browning in claiming in July when final payment was made and the deed delivered, that the property was clear and free from any incumbrance when in truth and fact it was not, and Browning knew that it was not.

Appellant, Maryland Casualty Company, after the filing of the action by Goody, commenced an action in the nature of an interpleader, wherein Goody and others were named defendants. Goody appeared, but the others either defaulted or withdrew their appearance. The issues and subject matter in the two cases are identical, and were tried by the court together, resulting in judgment for respondent Goody.

Appellant resists liability on the ground, first, that Browning was not a broker, and if he was, the broker's bond not given until March 1, 1928, did not cover the contract of purchase made in January, 1928; that there was no fraud, and that Goody could have, and should have, ascertained the facts with regard to the mortgage.

Section 53-2204, I. C. A., defines a real estate broker as follows:

''A real estate broker within the meaning of this chapter is a person who, for a compensation or promise thereof, sells, or offers for sale, buys, or offers to buy, negotiates, or offers to negotiate, either directly or indirectly, whether as the employee of another or otherwise, the purchase, sale, exchange, lease or rental of real estate or any interest therein for others. The word 'person' as used in this chapter shall be construed to mean and include a corporation and a partnership. The provisions of this chapter shall not apply to any person who purchases property for his own use or account, nor to any person, who, being the owner of property, sells, exchanges, leases, rents or otherwise disposes of the same for his own account, nor to any person holding a duly executed power of attorney from the owner granting power to consummate the sale, exchange, or leasing of real estate, nor to a salaried employee of such owner acting for such owner in the buying, selling, exchang-

ing or leasing of his property, nor to an attorney-at-law, in the performance of his duties as such attorney-at-law nor to any receiver, trustee in bankruptcy, guardian, administrator or executor, nor to any person acting under the order of any court, nor to any person selling under a deed of trust.

"One act, for a compensation or promise thereof, of buying, selling, exchanging, leasing or renting real estate of or for another person, or offering to buy, sell, exchange, lease or rent real estate of or for another shall constitute the person so acting a real estate broker within the meaning of this chapter."

January 12th, when the contract was made, Browning did not own the property, but on January 26th, offered to buy the property from a receiver, in whose hands it then was, for $279, and delinquent interest, water assessments and taxes. It is not definitely shown what these later amounted to, but the total paid was evidently in the neighborhood of $400. In other words, Browning was making by the transaction about $300.

This evidence was sufficient to justify the trial court in finding and concluding that Browning was acting as a real estate broker as defined by the statute. (*Mapes v. Foster*, 38 Wyo. 244, 266 Pac. 109; *Firestone v. O'Brien*, 97 Cal. App. 43, 274 Pac. 1006.)

While the contract of January 12th made reference to a present loan of $1,000: "It being agreed that he (Goody) may assume present loan of $1,000 if he so desires . . . . ," it is evident that Browning did not consider that Goody was to assume this mortgage, because Goody testified, and it was not denied, that about November 13, 1928, he saw Browning with regard to the matter, and wanted the transaction straightened up, at which time Browning asked for an extension of thirty, later receiving an additional sixty, days, admitted that he had not paid the mortgage, and later paid $400 on the mortgage.

The deed from Browning to Goody made no mention of the $1,000 mortgage, though in the deed Browning re-

ceived from the receiver, it is recited that the conveyance was made subject to the existing mortgage. This evidence was sufficient to justify the trial court in finding and concluding that Browning was the party who was to pay the $1,000 mortgage.

Appellant, however, claims that the parties were dealing at arm's-length; that, since Goody had knowledge of the existence of the mortgage, it being a matter of public record, it was necessary for him to ascertain for himself whether or not the mortgage had been released. Mrs. Goody made the final payment in her husband's absence, and testified, uncontradicted, as follows:

"Q. And what did Mr. Browning say to you when he came down on that day (the day the final payment of $1,100 was made)?

"A. He told me he came for the money and told me he had brought all the papers okayed by St. Clair and left them at the court house—the abstract and everything was at the Court House.

"Q. And ready to close?

"A. Yes, sir. And asked me for the $1100.

"Q. And you relied on Mr. Browning's statement and representation that the deal was ready to close and that everything was in order at that time and you gave him the check with that understanding?

"A. Yes, sir. I got the check book and was going to write it, and I says to Mr. Browning, I says, 'make it out.' So he wrote out the check and I signed it and at the bottom wrote what it was for."

This testimony justifies the conclusion that Browning meant that all the necessary papers were ready and that the mortgage had been released, inasmuch as it was his duty to release it, and that he intended the Goodys to understand and rely upon such false representation. It was a positive assertion of a material existing situation; not a mere expression of an opinion.

"A false and fraudulent representation, by one who assumed to have personal knowledge, to the purchaser of real

estate that there is no encumbrance thereon, and upon which representation the purchaser relies, and acts to his injury, will sustain an action for the tort, although the purchaser might have discovered the fraud by searching the public records. A man cannot state falsely to another in such cases and then complain because he was believed.'' (*Gannon, Goulding & Thies v. Hausaman,* 42 Okl. 41, 140 Pac. 407, 52 L. R. A., N. S., 519. See, also, *Riley v. Bell,* 120 Iowa, 618, 95 N. W. 170; *Scott v. Moore,* 89 Ark. 321, 116 S. W. 660; *Backer v. Pyne,* 130 Ind. 288, 30 N. E. 21, 30 Am. St. 231; *Carpenter v. Wright,* 52 Kan. 221, 34 Pac. 798; 26 C. J., pp. 1212, 1213, sec. 109, notes 49 and 50; 12 R. C. L., pp. 273, 274, sec. 39.)

*Baird v. Gibberd,* 32 Ida. 796, 189 Pac. 56, holds that an action for fraud or deceit cannot be predicated upon the mere expression of an opinion when the facts are equally within the knowledge of the parties, but also states that one has a right to rely upon a statement of a material fact made as a positive assertion under circumstances from which it is fairly inferable that the parties making the statement knew that the former was relying expressly upon their representations and that under such circumstances the one to whom the representations are made is under no obligation to inquire into their truth or falsity. (See, also, *Burger v. Calek,* 37 Ida. 235, 215 Pac. 981, and *Gridley v. Ross,* 37 Ida. 693, 217 Pac. 989.)

While these Idaho cases did not consider cases in which there was misrepresentation as to a mortgage, the general principles announced therein are applicable to the present action.

If there was fraud, it was because of the misleading and false statements in July, when the bond was in effect, and since the transaction was not completed until that time, if Browning was acting as a broker, and there was fraud, Goody was entitled to the protection of the bond. (*Kallash v. Claar,* 48 Ida. 714, 284 Pac. 1032.)

■ Appellant made no objection to the evidence of claimed admissions of Browning, nor motion to strike; hence no error was preserved.

■ It is also contended that the court erred in admitting testimony concerning admissions and statements of one Carroll, purporting to be an agent of appellant company. That portion of such evidence which related to an admission of liability by the company was stricken by the court.

Since the case was tried by the court sitting without a jury, the error, if any, which we do not decide, in admitting the other portion of the evidence, is not ground for reversal, as there is sufficient legal evidence to support the judgment and findings, since it will be presumed, if nothing appears to the contrary, that the judge disregarded such evidence and decided the case only on proper testimony. (*Bales v. Weaver*, 36 Ida. 704, 213 Pac. 342. And see *Darry v. Cox*, 28 Ida. 519, 155 Pac. 660; *Morton Realty Co. v. Big Bend Irr. & M. Co.*, 37 Ida. 311, 218 Pac. 433; *Brinton v. Johnson*, 41 Ida. 583, 240 Pac. 859; *Burlington Sav. Bank v. Grayson*, 43 Ida. 654, 254 Pac. 215.)

Judgment affirmed; costs awarded to respondent.

Budge, C. J., and Morgan and Wernette, JJ., concur.

Holden, J., disqualified.